FILED

98 SEP 10 PM 3:21

U.S. DISTRICT COURT
N.D. OF ALABAMA

ELLA ODEN,                          ]
                                    ]
    Plaintiff(s),               ]
                                    ]
vs.                                 ]
                                    ]    CV 97-N-2190-S
                                    ]
FOX TELEVISION STATIONS OF          ]
BIRMINGHAM, INC.,                   ]
                                    ]
    Defendant(s).               ]

ENTERED

SEP 10 1998

## Memorandum of Opinion

    In this employment discrimination action, Ella Oden asserts claims against Fox

Television Stations of Birmingham, Inc. (hereinafter "Fox") pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), the Civil

Rights Act of 1866, 42 U.S.C. § 1981, and the Equal Pay Act of the Fair Labor Standards Act,

29 U.S.C. § 206(d). Specifically, Ms. Oden alleges that while working at Fox she has been

subject to disparate terms and conditions of employment based on her race and/or sex,

including failure to train, unequal pay, and failure to promote. She also claims that she has

been retaliated against by Fox for filing an internal complaint with her union and a charge

with the Equal Employment Opportunity Commission (EEOC).

    The matter is presently before the court on cross motions for summary judgment

filed by Oden and Fox on July 1, 1998. The motions have been fully briefed and were

submitted at the court's regularly scheduled motion docket on Monday, August 31, 1998.

Upon due consideration, plaintiff's motion for summary judgment will be denied in its

entirety. Defendant's motion for summary judgment will be granted as to plaintiff's failure

42

to promote, equal pay, and retaliation claims, and denied as to plaintiff's failure to train claim.

## I.    **Statement of Facts.**[1]

WBRC-TV Channel 6 is the Fox affiliate in Birmingham, Alabama. Jerry Thorn serves as Vice-President of Engineering at Fox and is in charge of the Engineering and Production Departments at Channel 6. *Deposition of Jerry Thorn* at 27 & 29 (hereinafter *"Thorn Deposition"*). As head of the Engineering Department, Thorn is responsible for preparing employee work schedules, making final determinations regarding promotions within the department, selecting and purchasing new equipment for the department, and making decisions regarding the training of employees. *Thorn Deposition* at 38–45. Judy Horton is the Director of Human Resources at the station. *Declaration of Judy Horton* at ¶ 2 (hereinafter *"Horton Declaration"*).

Ella Oden accepted a position as a Production Technician in the Engineering Department of Channel 6 in November of 1994. *Deposition of Ella Oden* at 10 (hereinafter *"Oden Deposition"*). The Engineering Department places newly hired employees in positions based on operational needs, *Thorn Deposition* at 48; Oden was assigned to the position of daytime character generator. *Thorn Deposition* at 64. The terms and conditions of her employment are governed by a collective bargaining agreement between Fox station management and Local 253 of the International Brotherhood of Electrical Workers (IBEW).

---

[1]In developing the statement of facts in this opinion, the court considered those facts claimed to be undisputed by the parties, the parties' respective responses to those claims, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

*Oden Deposition* at 12. Under the agreement, there are three classifications of technicians in the Engineering Department: Production Technician, Technician, and Master Technician. *Declaration of Jerry Thorn Submitted with Defendant's Motion for Summary Judgment* at ¶ 4 (hereinafter *"Thorn Declaration I"*). The agreement provides the minimum rates of pay for each of the positions, and allows management to pay newly hired employees at a lower rate of pay for their first six months of employment. *1992–95 Collective Bargaining Agreement* at 15–16. Management may waive the lower initial pay rate if an employee has sufficient past technical experience, such as electric circuit board maintenance, or has worked at another television station, or has done work such as replacing components, designing circuits, or troubleshooting electronic circuits. *Thorn Deposition* at 90–91; *Thorn Declaration I* at ¶ 7.

When Oden was hired, she was initially paid at the rate of $391 per week, *Thorn Declaration I*, Ex. 3. The "current rate" for Production Technicians on the date of her hire was $487 per week. *1992–95 Collective Bargaining Agreement* at 16. At the time, she had no prior experience in the broadcasting industry; her prior employment involved "mainly paperwork" and had no similarity to her work at Fox. *Oden Deposition* at 44–45. Approximately nine days after Oden was hired, John Williams, a white male, was hired at the same rate of pay. *Thorn Declaration I*, Ex. 4. During labor negotiations, Jessie Simon, the Union Shop Steward, agreed that both Oden and Williams should be paid the lower initial rate until their six-month anniversaries pursuant to the collective bargaining agreement. *Thorn Declaration I* at ¶ 10 & Ex. 7. According to Oden, she first learned that she was being paid the lower initial rate "a couple of weeks or so after my hire date." *Oden*

3

*Deposition* at 159. On April 1, 1995, less than five months after they were hired, Oden and Williams were given pay increases to the "current rate" under the collective bargaining agreement. *Thorn Deposition* at 113; *Thorn Declaration I* at ¶ 10 & Exs. 8–9. Since then, Oden has received every pay raise due to her under the collective bargaining agreement. *Oden Deposition* at 114.

After Oden was hired, several male employees were hired and paid either at or slightly below the "current rate" in effect on their starting dates. These employees include Shane Towles, David McMahon, Scott Buehler, Edward Davis, and Kim Mitchell. *1995–98 Collective Bargaining Agreement* at 15–16. It is undisputed that all five of them were initially paid more than Oden and Williams because of their prior hands-on technical or broadcast experience. *Declaration of Jerry Thorn Submitted with Defendant's Response to Plaintiff's Motion for Summary Judgment* at ¶ 11–13 (hereinafter "Thorn Declaration II"). Oden admitted during her deposition that some white males that have been hired by Fox as Production Technicians since she was hired have been paid at an even lower initial rate than she was. *Oden Deposition* at 74.

Promotions in the Engineering Department are governed by the collective bargaining agreement, which provides that:

> A production technician is an individual hired into this contract unit and is a technician at an apprentice level. The station will give said production technician first consideration for vacancies to be filled at the technician level. They must have a valid FCC General Radio Telephone Operator's License or S.B.E. Broadcasting Technologist's Certificate to be eligible for such a promotion.

4

*Thorn Declaration I*, Ex. 1 at 3–4. There is no difference in the duties and responsibilities of an entry-level Production Technician and those of a Technician. *Thorn Deposition* at 87–88. Promotions to the position of Technician in the Engineering Department are made based on the job performance of those eligible for promotion under the collective bargaining agreement. *Thorn Declaration I* at ¶ 15; if two eligible employees are equal in their job performance, seniority is used to determine who is promoted. *Id.* The ability to operate at multiple positions in the Engineering Department is not required for promotion, *Thorn Deposition* at 81, 141–42, & 149–50. Promotion decisions are also not affected by what position the Production Technician is assigned to in the Engineering Department. *Thorn Deposition* at 133.

Oden received her FCC license in August of 1995. *Oden Deposition* at 29. During the Summer of 1996, four employees of the Engineering Department at Channel 6 terminated their employment with Fox and left for a new television station, ABC 33/40—including three Technicians, Jeff Wyatt, Roger Hastings, and Rick Watts, and one Master Technician, Ron Thomas. *Thorn Deposition* at 138–39 & 145–46. At around the same time, Paul Hicks was promoted from the position of Technician to Master Technician. *Thorn Deposition* at 146–47. In September of 1996, Phillip Moses and Rozel Revell were promoted from Production Technician positions to Technician positions. *Oden Deposition* at 58; *Thorn Declaration I* at ¶ 17. Moses, a white male, was hired by the station in October of 1993 and received his FCC license in July of 1993; Revell, a black male, was hired in April of 1994 and received his FCC license in August of 1991. *Oden Deposition* at 58; *Thorn Declaration I* at ¶ 17. Both Revell and Moses were promoted based on their job

5

performance. *Thorn Deposition* at 141–42; *Thorn Declaration I* at ¶ 18. David Polk, a white male who was hired by the station in November of 1989 and received his FCC license in July of 1993, was also not promoted. *Oden Deposition* at 56–57. On September 20, 1996, Simon wrote a letter to Fox complaining that Polk was not promoted, without mentioning Oden. *Thorn Declaration I*, Ex. 11. Oden does not claim that she should have been promoted ahead of Revell or Moses, nor does she contend that she is more qualified than Polk. *Oden Deposition* at 57–58. Instead, she states "I should have been promoted. I met the qualifications." *Oden Deposition* at 58.

A new collective bargaining agreement went into effect on April 1, 1998, under which a Production Technician who receives their license within the first year of their employment is automatically promoted to a Technician position. *Thorn Declaration I* at ¶ 32. Production Technicians who do not receive their license within the first year are automatically discharged. *Id.* On April 1, 1998, both Oden and Polk were promoted to open Technician positions. *Thorn Declaration I* at ¶ 32 & Exs. 19–20.

Employee training in the Engineering Department at Fox is provided in a way that does not impact the station's primary goal of running an efficient, first-rate operation. *Thorn Declaration I* at ¶ 20. Employees are trained at their operating position when first hired. *Thorn Declaration I* at ¶ 5; if an employee asks for training at other positions, that employee must be willing to work at that position if needed once his or her training is complete. *Thorn Declaration I* at ¶ 22. According to Jerry Thorn, many employees train themselves during down time by sitting down with other operators and learning the position. *Thorn Deposition*

at 61. Character generator operators generally have 45 minutes to an hour of down time at the beginning of a shift. *Thorn Deposition* at 76.

When Oden was hired, she received five to six weeks of training on the character generator. *Thorn Declaration I* at ¶ 13. The parties disagree as to whether Oden received additional training prior to March of 1997—Oden claims she received no training at all, while the defendant claims that Oden had asked for and received training in the audio tape room. *Declaration of Ella Oden* at ¶ 5; *Thorn Declaration I* at ¶ 20. Oden claims that she and Charlotte Stephenson, the only other female Production Technician in the Engineering Department, were the only ones who did not receive training on more than one piece of equipment during their first year. *Declaration of Jessie Simon, Jr.* at ¶ 6.

In December of 1996, a new piece of equipment that interacted with the character generator, called the Avid System, was installed in the Engineering Department. *Thorn Deposition* at 64–65. The operation of the Avid System required fifteen minutes of training and the acquisition of a password. *Thorn Deposition* at 66–67. Oden did not receive her training and password on the day the system was installed, but was provided with a password the next day after alerting Thorn to her inability to get into the system. *Oden Deposition* at 98 & 101–02. According to Thorn, it was "an honest mistake." *Thorn Deposition* at 70–71.

In March of 1997, Oden met with Judy Horton and Jerry Thorn and informed them that she wanted to be trained at several positions in the Engineering Department but wanted to continue in her Monday to Friday position as daytime character generator operator. *Oden Deposition* at 133; *Thorn Declaration I* at ¶ 21; *Horton Declaration* at ¶¶ 3–4. Some time

after Oden met with Horton and Thorn, she received the training she had requested. *Oden Deposition* at 135; *Thorn Declaration I* at ¶ 22; *Horton Declaration* at ¶ 5. In all, Oden has received between two to three months of training while being employed at the station. *Oden Deposition* at 78.

Oden filed a charge of discrimination with the EEOC on January 27, 1997. Subsequently, Oden's position was made part of the Production Department (instead of the Engineering Department) and Brad Weiss, a white male, was hired into the position. Weiss, who had approximately five years of experience as a character generator operator and seven years of television broadcast experience before coming to Fox, applied for the position on approximately December 30, 1996. *Thorn Declaration I* at ¶¶ 26–27 & Ex. 15. Fox decided to hire Weiss because of his creativity and vast experience as a character generator operator. *Thorn Declaration I* at ¶¶ 26–27. Oden was reassigned from a Monday through Friday schedule to a Saturday through Wednesday schedule.

## II. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

9

reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III.    Discussion.

Oden alleges in her complaint that Fox discriminated against her in the terms and conditions of her employment on the basis of race and sex, in violation of 42 U.S.C. § 1981, Title VII, and the Equal Pay Act, 29 U.S.C. § 206(d)(1),[2] and retaliated against her for exercising her rights under those statutes. *See Complaint* at ¶ 12.

## A.    Race and Gender Discrimination.

A plaintiff who alleges disparate treatment based on gender under Title VII or § 1981 must prove that the defendant acted with a discriminatory purpose. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984) (race discrimination case). A plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case, *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied,* 488 U.S. 1004 (1989), and may establish a prima facie case in one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by meeting the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) by demonstrating through statistics a pattern of discrimination. *See Early v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990). "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to

---

[2]It should be noted that § 1981 by its terms does not provide protection against discrimination based on sex, and the Equal Pay Act does not provide protection against unequal pay based on race. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *EEOC v. White and Sons Enterprises*, 881 F.2d 1006, 1008 (11th Cir. 1989).

discriminate . . . constitute direct evidence of discrimination." *Id.* at 582. In the present case, Oden has presented no direct or statistical evidence of discrimination by the defendant. Therefore, she must attempt to establish a prima facie case of discrimination through circumstantial evidence.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[3] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring it to articulate some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991) (quoting *Grigsby v. Reynolds Metal Co.,* 821 F.2d 590, 596 (11th Cir. 1987), *cert. denied,* 502 U.S. 1058 (1992).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine,* 450 U.S. at 255 & n.10. The plaintiff must then prove by a preponderance of the evidence that the reason offered

---

[3]Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas–Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804. In the Eleventh Circuit, summary judgment for the defendant is inappropriate once a plaintiff has established a prima facie case and there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged actions. *Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir. 1997); *Howard v. BP Oil Co.,* 32 F.3d 520 (11th Cir. 1994).

## 1. Failure to Promote Claim.

Oden claims that she was denied a promotion from the Production Technician position to the Technician position on the basis of her race and sex. Specifically, she asserts that she should have been promoted to Technician during 1996, after several Fox employees left the station for a rival and two Production Technicians were promoted to Technician. Contrary to her complaint, *see Complaint* at ¶ 12, plaintiff does not raise the issue of racial discrimination in either her response to Fox's motion for summary judgment or her own motion for summary judgment, relying instead exclusively on a theory of gender discrimination. *See Plaintiff's Responsive Submission to Defendant's Motion for Summary Judgment* at 2–3; *Plaintiff's Motion for Summary Judgment* at 13.

To allege a prima facie case of failure to promote under the *McDonnell Douglas* framework, plaintiff must show that: (1) she is a member of a protected minority group; (2) she was qualified for and applied for the promotion; (3) she was rejected in spite of her qualifications; and (4) the individual who received the promotion is not a

13

member of a protected group and had lesser or equal qualifications. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635 (11th Cir. 1998).

It is undisputed that Oden is a member of a protected minority group, that she met the minimum requirements for the position of Technician, and that she was rejected. With regard to the fourth element of the *McDonnell Douglas* framework—the requirement that the individual who received the promotion is not a member of a protected group and had lesser or equal qualifications—the evidence demonstrates that one of the individuals promoted, Rozel Revell, was black and that both Revell and Phillip Moses had more experience than Oden. Revell had been with Fox since April of 1994 and received his FCC license in August of 1991; Moses was hired by the station in October of 1993 and received his FCC license in July of 1993. Oden does not deny that Revell and Moses were promoted based on their job performance, nor does she claim that she should have been chosen over either of them. There is simply no dispute as to whether the two employees who were promoted ahead of Oden were more qualified for the position. Since plaintiff cannot satisfy the fourth prong of her prima facie case, Fox's motion for summary judgment with regard to failure to promote is due to be granted.[4]

### 2.   Failure to Train Claim.

Plaintiff also alleges that Fox discriminated against her by denying her the opportunity to train on equipment other than the character generator, the equipment

---

[4] Insofar as Oden claims that Fox discriminated against her by leaving some recently vacated Technician positions unfilled to avoid promoting her, Fox has indicated that the station decided against any further promotions during 1996 when negotiations with the union broke down. Once an agreement regarding promotional criteria was reached in 1998, Oden was promoted. Oden has done nothing to suggest that this legitimate, nondiscriminatory reason for not promoting any Production Technicians during that time period was pretextual.

14

relevant to the position to which she was assigned. As with her failure to promote claim, Oden seems to have abandoned her claim of racial discrimination in this context. *See Plaintiff's Responsive Submission to Defendant's Motion for Summary Judgment* at 2–3; *Plaintiff's Motion for Summary Judgment* at 13. Oden alleges that she was the only one who did not receive additional training during her first year of employment, and that every male employee received training on various pieces of equipment during their first year of employment.

To make out a prima facie case of failure to train, Oden must show: (1) that she is a member of a protected class; (2) that she satisfactorily performed the duties required in her position; (3) that Fox had a policy of providing on-the-job training to its Production Technicians; and (4) that plaintiff was not provided this training under circumstances giving rise to an inference of discrimination. *See Lopez v. Metropolitan Life Insurance Co.,* 930 F.2d 157, 161 (2d Cir.), *cert. denied,* 502 U.S. 801 (1991).

It is undisputed that Oden is a member of a protected class and that she performed her job satisfactorily. Her prima facie case turns on the last two elements—whether Fox typically provided training to its Production Technicians and whether plaintiff was denied this training under circumstances giving rise to an inference of discrimination. Fox's practice regarding training is informal. Instead of being provided pursuant to a prescribed training policy or schedule, training is granted at Channel 6 by request. Before being trained at positions other than their operating position, employees must be willing to work at those positions if needed. The training procedure is informal; employees often use free time during their shift to train with other equipment on their own. Perhaps because of this,

the parties disagree as to what amount of training is "typically" provided by the Engineering Department.

The parties are also in disagreement as to how much training was provided to the plaintiff. Oden admits to having received approximately two to three months of training since beginning her employment with Fox. Most or all of the training she received on equipment other than the character generator, however, was provided to her during the period of March through September of 1997—after she filed a charge with the EEOC. There is some dispute as to whether Oden asked for and received training on audio equipment prior to the date she filed the EEOC charge. Nonetheless, the court feels that plaintiff has met the elements of a prima facie case regarding Fox's failure to train her similarly to male employees of the station.

Fox has articulated a legitimate nondiscriminatory reason for not providing Oden with training on equipment other than the character generator and possibly the audio machines. The station claims that Oden requested training on equipment relevant to positions at which Oden refused to work if necessary, contrary to Fox's informal training policy. Thorn also asserts in a declaration that Oden did not take the initiative to train during down time in her shift, like some other employees.

As evidence that Fox's stated reasons are pretextual, Oden asserts that no male employee of the Engineering Department failed to obtain further training within his first year of employment, and that the only other woman hired by Thorn to handle equipment operations similarly trained on and operated only one piece of equipment during her first year of employment. Oden does not deny that she did not take the initiative to train on her

16

own, but asserts that after Thorn denied her requests for training on other machines, she felt he would attempt to block any effort on her part to train informally. Although it is not overwhelming, the court feels that Oden has proffered sufficient evidence to allow a reasonable factfinder to disbelieve the defendant's proffered reasons for failing to train the plaintiff. Accordingly, the defendant's motion for summary judgment with regard to Fox's failure to train the plaintiff is due to be denied.

## B. Equal Pay Claim.

Oden alleges that she was initially paid less than her male counterparts, in violation of the Equal Pay Act and Title VII. Specifically, she claims that the decision to start her at a pay rate lower than the "current rate" discriminated against her based on her gender.

In its motion for summary judgment, the defendant argued that Oden's claims under the Equal Pay Act and Title VII with regard to her initial pay are time-barred because they are beyond both the two-year limitation of the Equal Pay Act and the 180-day limitation for filing an EEOC charge of Title VII. See 29 U.S.C. § 255(a); 42 U.S.C. § 2000e-5(e). Plaintiff has not responded to this assertion in either her response to defendant's motion for summary judgment or her own motion for summary judgment.[5] The court will consider those points conceded by the plaintiff. See Swedish American Hospital v. Midwest Operating Engineers Fringe Benefit Funds, 842 F. Supp. 1039, 1043 (N.D. Ill. 1993); Southern Nevada Shell Dealers Ass'n v. Shell Oil, 725 F. Supp. 1104, 1109 (D. Nev. 1989);

---

[5] In her reply to Fox's response to her motion for summary judgment, Oden argues briefly that the statute of limitations on her claim of disparate training should be tolled because of a "continuing violation" by Thorn in preventing her from receiving training. Regardless of whether this is true, defendants have not argued otherwise, and such an assertion has no bearing on her equal pay claim.

17

*Valluzzi v. United States Postal Service*, 775 F. Supp. 1124, 1125 (N.D. Ill. 1991). Therefore, defendants' motion for summary judgment with regard to the equal pay claims will be granted.

Even if Oden's equal pay claims were not time-barred, summary judgment would still be appropriate. According to *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792 (11th Cir. 1992), to make a prima facie case of disparate pay under the Equal Pay Act the plaintiff must demonstrate that the "employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Beavers,* 975 F.2d at 795 (citations and internal quotations omitted).

Once a prima facie case is established under the Equal Pay Act, the defendant must prove that the difference in wages was justified by any of the four affirmative defenses set forth in 29 U.S.C. § 206(d)(1). *See Meeks v. Computer Associates International,* 15 F.3d 1013 (11th Cir. 1994). Differences in pay are permissible if they are based on one of the following: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any factor other than sex. *See* 29 U.S.C. § 206(d)(1). If the defendant meets this burden, the plaintiff must rebut the explanation by showing with affirmative evidence that the reason offered is pretextual or offered as a post-event justification for a gender-based disparity. *Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir. 1995). An employer may rely on the prior salary and experience of an employee when setting that employee's starting salary, as long as it is not used as a pretext for discrimination. *Irby,* 44 F.3d at 955–56.

18

In the present case, the five employees the plaintiff uses as comparators undisputably possessed more extensive experience in hands-on and/or broadcast engineering. In fact, the male employee whose experience most closely matched that of Oden's at the time she was hired was John Williams—and he was paid the same initial salary as the plaintiff. Oden cannot put forth facts sufficient to demonstrate the existence of a genuine issue of fact as to the truth of Fox's proffered nondiscriminatory reasons; therefore, Fox's motion for summary judgment of Oden's equal pay claims is due to be granted.

## C.    Retaliation Claim

Oden's final claim is that she was retaliated against for filing a charge with the EEOC on January 27, 1997. Title VII protects employees from discrimination by employers because the employee has opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff need not prove the actual existence of those unlawful practices; rather, he need only have a reasonable belief that the defendant engaged in such practices. *Wu v. Thomas,* 863 F.2d 1543, 1549 (11th Cir. 1989); *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130 (5th Cir. Unit A 1981), *cert denied,* 455 U.S. 1000 (1982).

In order to make out a prima facie case of retaliatory discharge, the plaintiff must show that (1) she was engaged in statutorily protected expression; (2) Fox took adverse employment action against her; and (3) there was a causal link between the protected expression and the adverse action. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993); *Lindsey v. Mississippi Research and Dev. Ctr.,* 652 F.2d 488, 491 (5th Cir. Unit A 1981). Once a prima facie case is established, the defendant must articulate some

19

legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that this reason is merely a pretext for discrimination. *Id.* at 804.

In the Eleventh Circuit, "statutorily protected expression" includes, *inter alia,* filing an EEOC charge, 42 U.S.C. § 2000e-3(a), formal and informal complaints to an employer, *Rollins v. State of Fla. Dep't of Law Enforcement,* 868 F.2d 397, 400 (11th Cir. 1989), and written protests, *Smalley v. City of Eatonville,* 640 F.2d 765 (5th Cir. Unit B 1981). Oden filed a charge with the EEOC on January 27, 1997, and has therefore established that she engaged in statutorily protected expression.

Oden claims that the "adverse employment action" Fox took against her was hiring Brad Weiss to operate the character generator during the prime time shift, reassigning her from the Monday to Friday shift to the Saturday through Wednesday shift. Oden does not contend in her motion for summary judgment that any changes in her duties that may have resulted from the shift change constitute the adverse action by Fox. Rather, she complains that the Monday to Friday shift is "one of the more favored schedule spots among employees of the Engineering Department" and the Saturday through Wednesday schedule is "less favored." The Eleventh Circuit has recently joined the First, Ninth, and Tenth Circuits in holding that Title VII's protection against retaliatory discharge extends to adverse actions which fall short of ultimate employment decisions. *See Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453 (11th Cir. 1998). Thus, actions such as undeserved negative job evaluations, demotions, disadvantageous transfers, or toleration of harassment are

20

actionable under the retaliation clause. *See id.* at 1456 (citing *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir. 1987); *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 984–86 (10th Cir. 1996)). Of course, "some threshold level of substantiality . . . must be met for unlawful discrimination to be cognizable under the anti-retaliation clause." *Id.*

The Eleventh Circuit recently addressed in exhaustive detail the factors that courts should consider in determining whether employment actions, and lateral transfers in particular, constitute "adverse" employment actions for purposes of a retaliation claim under the Americans with Disabilities Act (ADA).[6] *See Doe v. Dekalb County School District,* 145 F.3d 1441 (11th Cir. 1998). According to *Doe,* the relevant inquiry is an objective one: whether a reasonable person in the plaintiff's place would have viewed as adverse the employment action taken by the employer. *Id.* at 1448–49.

The employment action taken with regard to Oden can be likened to a lateral job transfer, since she suffered no loss in pay, reduction in prestige, or change of job title. As noted in *Doe,* several circuits have held that a truly lateral transfer—one that "does not involve a demotion in form or substance"—cannot be adverse. *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996); *see also Montandon v. Farmland Industries,* 116 F.3d 355, 359 (8th Cir. 1997); *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 886 (6th cir. 1996). In the present case, there is no evidence that Oden's reassignment to a different shift resulted in a loss of pay, title, or prestige. Instead, it appears that Oden's transfer amounted to what the Ninth Circuit described as "a subjective loss of job

---

[6]The ADA's requirement of an "adverse employment action" for a retaliation claim is substantially similar to the same requirement in Title VII. *See Collins v. State of Illinois,* 830 F.2d 692, 702–04 (7th cir. 1987).

21

satisfaction rather than an adverse employment action." *Horn v. County of San Diego,* No. 96-55610, 1997 WL 579145 (9th Cir. 1997) (per curiam).

Plaintiff's allegation of retaliation is also flawed in terms of the third required element of a prima facie case: causation. Oden does not dispute that Fox made the decision to begin looking for a more qualified character generator operator in the latter part of 1996, and placed advertisements in several publications soliciting applications for the position. Brad Weiss submitted his application on December 30, 1996—nearly a month before Oden filed her EEOC complaint. The causal link between the statutorily protected expression and the adverse employment action required to make out a prima facie case of retaliation is therefore absent. As a result, defendant's motion for summary judgment on Oden's claim of retaliation is due to be granted.

**D.    Conclusion**

For the foregoing reasons, plaintiff's motion for summary judgment will be denied in its entirety. Defendant's motion for summary judgment will be granted as to plaintiff's failure to promote, equal pay, and retaliation claims, and denied as to plaintiff's failure to train claim.

A separate order, consistent with this opinion, will be entered.

Done, this __10th__ of September, 1998.

                                        EDWIN L. NELSON
                                   UNITED STATES DISTRICT JUDGE